UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANDRA SATINA,<br><br>                      Plaintiff,<br><br>-against-<br><br>CITY OF NEW YORK, CATHY RUSH-BROWN, and JOHN and JANE DOE (said names being fictitious, the persons intended being those who aided and abetted the unlawful conduct of the named Defendants),<br><br>                      Defendants. | 24-CV-1842 (JGLC)<br><br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

Sandra Satina, who worked at the New York City Human Resources Administration and Department of Social Services until her retirement at the age of 62, brings claims for age-based and disability-based discrimination against her former employer. Satina alleges that she was unfairly evaluated on account of her age and was denied COVID-19-related accommodations and office transfer requests on account of her age and disability. Defendants move to dismiss. Because Satina has failed to allege a minimum inference of discriminatory motive, Defendants' motion is GRANTED.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Complaint and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

**I.**    **Plaintiff's Employment at HRA**

Plaintiff Sandra Satina is a former employee with the New York City Human Resources Administration/Department of Social Services ("HRA"). ECF No. 1 ("Complaint" or "Compl.")

¶ 23. Plaintiff began her employment with HRA in October 1986 and held various fraud investigation roles until her retirement in March 2022. *Id.* ¶¶ 23–34. Plaintiff was continuously promoted in the earlier years of her employment, until she obtained the position of Deputy Director. *See id.* In November 2012, Plaintiff was demoted from Deputy Director to Associate Fraud Investigator. *Id.* ¶ 37. At her retirement in March 2024, Plaintiff was an Associate Fraud Investigator II. *Id.* ¶ 39. Except for certain instances detailed later, Plaintiff's performance evaluations have been positive, ranging from "Outstanding" and "Exceptional" to "Good." *Id.* ¶¶ 26, 27, 29, 31–32, 36, 48, 50, 53.

## II.     Plaintiff's Alleged Discriminatory Workplace Experiences

Plaintiff alleges that she experienced discriminatory treatment on several occasions as an HRA employee. Plaintiff claims that in 2008, she was being paid substantially less than her male subordinates. *Id.* ¶ 43. After complaining of the pay gap, Plaintiff claims she was retaliated against by receiving a marginal performance evaluation for the first time in her career. *Id.* ¶ 44. Thereafter, Plaintiff continued to complain and request salary increases. *Id.* ¶ 45. In June 2012, she was notified by the new Executive Deputy Commissioner that she would be demoted from Deputy Director to Associate Fraud Investigator. *Id.* Plaintiff alleges that this new Executive Deputy Commissioner "harbored racial animus toward Hispanics." *Id.* Plaintiff thereafter filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 46. In November 2012, Plaintiff was formally demoted. *Id.*

In June 2019, Defendant Cathy Rush-Brown became Plaintiff's supervisor and would remain so until 2022. *Id.* ¶¶ 19, 51. Plaintiff alleges that until Rush-Brown became Plaintiff's supervisor, Plaintiff had consistently received evaluations of "Very Good." *Id.* ¶¶ 48–50. However, Rush-Brown began to criticize Plaintiff's work and issued two evaluations of

"Marginal" for performance in 2020 and 2021, one on March 12, 2021, and another sometime thereafter. *Id.* ¶¶ 52, 64, 71. Plaintiff alleges that these subpar evaluations were unjustifiable and discriminatory. *See id.* ¶¶ 64–73. Specifically, Plaintiff points out that Rush-Brown was supervising four other employees in their thirties that Rush-Brown did not criticize. *Id.* ¶¶ 51, 55. At the time, Plaintiff was in her fifties and the oldest employee on the team. *Id.* ¶ 51.

Plaintiff further alleges that Rush-Brown unfairly criticized her ability to perform computer-based tasks. *Id.* ¶¶ 62, 64–67. First, Rush-Brown assigned Plaintiff computer-based assignments that were out of her title and for which she never received adequate training. *Id.* ¶ 60, 62. Second, Plaintiff alleges she was experiencing computer problems that she was unable to resolve because she could not travel to her work site to address the problems, because she had disabilities that prevented her from public commute during the COVID-19 pandemic. *Id.* ¶ 60. Plaintiff claims that Rush-Brown used both factors to falsely criticize Plaintiff for an inability to operate basic computer programs. *Id.* ¶ 65–66.

## III.  HRA's Alleged Failure to Accommodate

Plaintiff suffers from asthma, panic attacks, and anxiety disorder. *Id.* ¶ 40. As a result of her anxiety, Plaintiff has extreme difficulty wearing a face mask during COVID-19 public mask mandates, which caused trouble breathing and panic attacks. *Id.* ¶ 41. Plaintiff alleges that her disabilities were well known to HRA and her supervisors, because she has had to rush to the emergency room during work hours due to the symptoms of her disabilities. *Id.* ¶ 42.

In March 2020, Plaintiff began to work from home due to the COVID-19 pandemic. *Id.* ¶ 59. In February 2022, City employees resumed work in office. *Id.* ¶ 74. Plaintiff alleges that she was unable to commute to work because of the Metropolitan Transit Authority's ("MTA")

3

continuing mask mandate. *Id.* ¶ 74. As such, Plaintiff was granted a reasonable accommodation to work remotely. *Id.* ¶ 75.

On May 31, 2022, HRA informed Plaintiff that she must report in-person on June 14, explaining that her reasonable accommodation had become moot because masks were no longer required in office. *Id.* ¶ 76. On June 6, 2022, Plaintiff submitted a new request for reasonable accommodate along with a note from her doctor. *Id.* ¶ 78. This note specified that Plaintiff's disability symptoms were triggered by wearing a mask, and that because of the MTA's mask mandate, it was not "in her best health interest" to travel on the subway to work. *Id.* ¶ 79.

Plaintiff requested to work remotely until a decision was made on her request for accommodation. *Id.* ¶ 81. She was denied. *Id.* Plaintiff alleges that at least three other younger employees in her unit were permitted to work remotely while their requests were pending. *Id.* ¶ 82. Plaintiff also alleges that another employee in her seventies was denied a reasonable accommodation to work from home. *Id.* ¶ 83.

On June 22, 2022, Plaintiff's request for accommodation was denied due to "the ability to remove your face covering while at work." *Id.* ¶ 84. As a result, Plaintiff returned to in-office work on July 1, 2022. *Id.* ¶ 87. Plaintiff alleges that contrary to HRA's representations, employees were still required to wear masks at work while interacting with other employees. *Id.* ¶¶ 87, 88. To commute to work, Plaintiff often spent money on taxi or car services. *Id.* ¶ 90. During this time, Plaintiff became aware of a supervisor in her unit who had been granted a reasonable accommodation. *Id.* ¶ 91.

On July 21, 2022, Plaintiff requested intermittent leave for her anxiety and back spasms. *Id.* ¶ 92. Plaintiff's request was denied. *Id.* ¶ 93. Plaintiff alleges that other HRA employees who were not disabled were permitted to work from home. *Id.*

On August 11, 2022, Plaintiff requested to transfer to another HRA office. *Id.* ¶ 94. She did not receive any response. *Id.* ¶ 95. On March 6, 2023, Plaintiff alleges that she learned another less senior supervisor had been granted an office transfer. *Id.* ¶ 100.

On December 8, 2022, Plaintiff submitted another request for reasonable accommodation. *Id.* ¶ 96. Some weeks later, at the request of HRA, Plaintiff submitted a doctor's note recommending that Plaintiff work from home for at least the next year. *Id.* ¶ 98. On December 22, 2022, HRA denied this request. *Id.* ¶ 99.

Plaintiff alleges that as a result of the failure to accommodate or to transfer, she was forced to retire early at the age of 62, when she had intended to work until she was 70. *Id.* ¶ 103. As a result, Plaintiff alleges that she suffered significant monetary losses, emotional distress, lasting embarrassment, humiliation, anguish, and other incidental and consequential damages and expenses. *Id.* ¶¶ 104–06.

### IV. Procedural History

On February 23, 2023, Plaintiff filed charges of discrimination with the EEOC pursuant to the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"). *Id.* ¶ 9. The EEOC issued a Right to Sue Notice on February 23, 2024. *Id.* ¶ 10. On March 11, 2024, Plaintiff filed this instant action against the City of New York (the "City"), Cathy Rush-Brown, and John and Jane Does (the "Doe Defendants"). ECF No. 1. Specifically, Plaintiff alleges disability discrimination in violation of the ADA and the Rehabilitation Act against the City, and age discrimination in violation of the ADEA against the City. *See id.* Plaintiff further alleges age and disability discrimination in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") against all Defendants. *See id.* Plaintiff seeks punitive damages. *Id.* ¶ 139.

On June 21, 2024, Defendants filed a motion to dismiss the Complaint. ECF No. 15; ECF No. 16 ("Mot."). Plaintiff opposes. ECF No. 19 ("Opp.").

**LEGAL STANDARD**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

**DISCUSSION**

This discussion proceeds in three parts. First, given the span of time covered by the Complaint, the Court clarifies the applicable statutes of limitations and which acts may give rise to a timely claim. Second, the Court finds that Plaintiff has failed to state any age discrimination claim. Third, Plaintiff's claims for disability discrimination, both under federal law and the New York state and city laws, are also inadequately pleaded. Finally, the Court grants Plaintiff limited leave to amend the Complaint.

I.    **Applicable Statutes of Limitations**

Claims brought under the Rehabilitation Act, NYSHRL, and NYCHRL are subject to a three-year statute of limitations. *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011); *Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 63 (2d Cir. 2021). Plaintiffs asserting claims under the ADEA or the ADA must file an EEOC complaint within 300 days of the alleged discriminatory action. *See Tewksbury v. Ottaway Newpapers*, 192 F.3d 322, 325, 328 (2d Cir. 1999).

Plaintiff brought the instant action on March 11, 2024. ECF No. 1. Plaintiff allegedly filed her EEOC complaint on February 23, 2023. Compl. ¶ 9. Accordingly, claims brought under the Rehabilitation Act, NYSHRL, and NYCHRL must be based on acts occurring on or after March 11, 2021. These include the denials of Plaintiff's COVID-19-related accommodation and transfer requests, as well as critiques and performance evaluations received under Defendant Rush-Brown. Claims brought under the ADEA and ADA must be based on acts occurring on or after April 29, 2022. These include only the denials of Plaintiff's COVID-19 related accommodation and transfer requests. Other acts fall outside the applicable statutes of limitations and cannot sustain Plaintiff's claims. Nonetheless, these acts "can serve as evidence in support of another, valid claim." *Henry v. Wyeth Pharmaceuticals, Inc.*, No. 05-CV-8106 (WCC), 2007 WL 4526525, at *4 n. 4 (S.D.N.Y. Dec. 19, 2007). However, as the Court explains below, Plaintiff lacks any valid claim to support.

II.    **Plaintiff Fails to State a Claim for Age Discrimination**

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To survive a motion to dismiss an ADEA claim, a

7

plaintiff must plausibly allege that she: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 51 (S.D.N.Y. 2019) (quoting *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 484–85 (S.D.N.Y. 2017)). "Age discrimination claims under the NYSHRL and the NYCHRL are evaluated under the same analytic framework as claims brought under the ADEA." *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 157–58 (S.D.N.Y. 2022) (internal citation and quotation marks omitted); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). Below, the Court examines each requirement in turn.

### A. Protected Class

Plaintiff has sufficiently that she is a member of a protected class. Specifically, Plaintiff has represented that she is 62 years old and was in her fifties when the acts giving rise to this lawsuit occurred. *See* Compl. ¶¶ 13, 51; 29 U.S.C. § 631(a) (providing that the ADEA applies to individuals who are at least 40 years of age).

### B. Qualification

Plaintiff has also sufficiently alleged that she was qualified for her position of employment. "To satisfy the second element required to plead a discrimination claim under the ADEA, a plaintiff must show only that [she] possesses the basic skills necessary for performance of the job." *Zoulas*, 400 F. Supp. 3d at 53 (internal citation omitted) (cleaned up). Plaintiff met this low bar by stating that throughout her decades-long tenure, she has consistently received evaluations of "Good" or higher, except for two evaluations while she was being supervised by Rush-Brown. Compl. ¶¶ 26, 27, 29, 31–32, 36, 48, 50, 53.

### C. Adverse Employment Action

An adverse employment action must cause an employee to suffer "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis,* 601 U.S. 346, 354 (2024); *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024) (holding that *Muldrow*'s recent standard for adverse action in a Title VII context also extends to the ADEA and ADA). Such a harm need not be significant, or "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow*, 601 U.S. at 355. "That said, even under *Muldrow*, some workplace events that are unpleasant are not necessarily adverse employment actions." *Mitchell*, 745 F. Supp. 3d at 91. The minimum requirement is that there must be some "disadvantageous change in the terms or conditions of the plaintiff's employment." *Id.* at 90 (internal citation and quotation marks omitted).

Here, the Court understands Plaintiff to bring grievances regarding three categories of actions: the issuance of negative performance evaluations, critiques levied against Plaintiff outside of formal evaluations, and the denial of accommodations and transfer requests related to COVID-19.

The first two categories fail to constitute adverse employment action. As courts in this Circuit have frequently held prior to *Muldrow*, "[c]riticism of an employee in the course of evaluating and correcting his or her work is not, in and of itself, [an] adverse employment action." *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 214 (E.D.N.Y. 2014) (citing *Weeks v. N.Y. State Div. of Parole*, 273 F.3d 76, 86 (2d Cir. 2001)). Claims that employers "embarrassed, demeaned, intimidated, and excessively scrutinized" an employee are also not adverse employment actions. *Zoulas*, 400 F. Supp. 3d at 55 (collecting cases). For such acts to

arise to adverse employment action, they must "trigger other negative consequences in the terms and conditions of the plaintiff's employment." *Id.* (quoting *Dimitracopoulos*, 26 F. Supp 3d at 214). Though *Muldrow* no longer requires the negative consequences to be significant, *Muldrow* reiterates the requirement for some disadvantageous change in the plaintiff's employment. *See Muldrow*, 601 U.S. at 354–55.

In this case, Plaintiff has not described what terms and conditions of her employment changed or were harmed as a result of her two negative evaluations or Rush-Brown's critiques. Plaintiff does not appear to have been demoted, to have lost earnings, or to even have suffered a change in role or responsibility. The negative evaluations and critiques cannot give rise to an age discrimination action. *See Mitchell,* 745 F. Supp. 3d at 91 (holding that even after *Muldrow*, "a mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment") (internal citation and quotation marks omitted).

However, the denial of accommodation and request to transfer offices does constitute adverse employment action. To be sure, "[p]rior to the COVID-19 pandemic, courts in the Second Circuit generally found that denying an employee's request to work remotely was not an adverse employment action." *Thompson v. Shutterstock, Inc.*, No. 23-CV-4155 (JGLC), 2024 WL 2943813, at *7 (S.D.N.Y. June 10, 2024) (internal citation omitted); *see Martinez-Santiago v. Zurich N. Am. Ins. Co.*, No. 07-CV-8676 (RJH), 2010 WL 184450, at *7 (S.D.N.Y. Jan. 20, 2010) ("Although the Second Circuit has not ruled on whether denial of work-from-home or telecommuting status constitutes an adverse employment action, other courts in this and other circuits have consistently found that it does not.") (collecting cases). But "[i]n the unique context of the COVID-19 pandemic, denying an employee's request to work from home was arguably

not a mere inconvenience, particularly when other employees were allowed to do so." *Gayles v. Roswell Park Cancer Inst. Corp.*, No. 22-CV-750 (CR), 2023 WL 6304020, at *6 (W.D.N.Y. Sept. 28, 2023) (internal citation and quotation marks omitted). Even before *Muldrow* lowered the standard for what constitutes adverse action, at least two courts in the Second Circuit have found that denial of permission to work remotely may constitute an adverse employment action in discrimination claims (although both cases found the supporting allegations to be insufficient). *Id.* at *5.

Here, Plaintiff has alleged that the denial of her accommodation requests and her transfer requests caused her to suffer health issues during public commute and posed financial difficulties because she was forced to take taxis into work or pay tolls and for parking when she drove. Compl. ¶¶ 89, 90. Plaintiff alleges that the impact on her employment conditions "forced [her] to retire early." *Id.* ¶ 103. Plaintiff has sufficiently alleged that the denial of her ability to work from home was plausibly an adverse employment action.

### D. Discriminatory Intent

At the pleadings stage, a plaintiff must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 51 (S.D.N.Y. 2019) (internal citation omitted). Such minimal support can be shown through allegations that similarly situated persons were treated differently, or through direct comments suggesting discriminatory animus. *See id.* at 55–56. However, Plaintiff has failed to meet this low bar. All Plaintiff provides are vague statements that "at least three other, younger employees in her unit were permitted to work remotely while their requests [for accommodations] were pending," Compl. ¶ 82, and that "an employee in her 70s was forced to take retirement due to HRA denying her a reasonable accommodation to work from home."

11

Compl. ¶ 83. Plaintiff offers no details about how these four other employees were similarly situated to herself—for example, their day-to-day responsibilities, distances from work, or performances at work. While it is certainly possible that age was a discriminatory factor, without more, the Court cannot say it is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully).

Plaintiff has failed to state a claim for age discrimination.

### III.    Plaintiff Fails to State a Claim for Disability Discrimination

To plead disability discrimination under the ADA, a plaintiff must show that "(1) the defendant is a covered employer; (2) the plaintiff suffered from, or was regarded as suffering from, a disability within the meaning of the statute; (3) the plaintiff was qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (4) she suffered an adverse employment action because of her disability or perceived disability." *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 566–67 (S.D.N.Y. 2023) (quoting *Dobbs v. NYU Langone Medical Ctr.*, No. 18-CV-1285 (MKV), 2021 WL 1177767, at *5 (S.D.N.Y. Mar. 29, 2021)). The same standard applies for claims brought under the Rehabilitation Act. *See Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023 (NSR), 2020 WL 2836760, at *9 (S.D.N.Y. May 31, 2020). As with ADEA claims, a plaintiff alleging disabilities discrimination must "plead facts plausibly supporting that a 'minimal inference of discriminatory motivation' existed in connection with the adverse employment action." *Crosby*, 695 F. Supp. 3d at 567 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

By contrast, discrimination claims brought under the NYCHRL are subject to a more liberal standard. Under the NYCHRL, a plaintiff must only plead "differential treatment of any

degree based on a discriminatory motive; the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct." *Gorokhovsky v. New York City Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (internal citation and quotation marks omitted). Claims under the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 299 (S.D.N.Y. 2019) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 209 (2d Cir. 2013)). As of August 12, 2019, the standard for discrimination claims under the NYSHRL is comparable to the standard of the NYCHRL. *De Souza v. Planned Parenthood Fed'n of Am., Inc.*, No. 21-CV-5553 (LGS), 2023 WL 2691458, at *11 (S.D.N.Y. Mar. 29, 2023). As such, NYSHRL claims in this case "rise and fall" with NYCHRL claims. *Id.*

The Court applies the federal standards separately from New York state and city law standards, finding that Plaintiff has failed to sufficiently allege a disability discrimination claim under both.

### A. ADA & Rehabilitation Act Claims

Defendants do not dispute that the HRA is an employer covered by the applicable statutes or that Plaintiff is a qualified employee. Defendants do challenge whether Plaintiff was suffering from a qualifying disability and whether Plaintiff suffered an adverse employment action because of her disability.

#### 1. Qualifying Disability

Federal law defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C § 12102(2). The term "substantially limits" should be "construed broadly in favor of expansive coverage, to the

maximum extent permitted by the terms of the ADA" and "is not meant to be a demanding standard." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014) (citing 29 C.F.R. § 1630.2(j)(1)(i)). "[A]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.*

In light of federal law's expansive coverage and the Court's duty to draw all reasonable inferences in favor of Plaintiff, Plaintiff's alleged disability meets this standard. Plaintiff has alleged that she suffers from asthma, panic attacks, and an anxiety disorder which are triggered by wearing a face mask. Compl. ¶¶ 40, 41. She states that she was rushed to the emergency room during work hours as a result of her condition. *Id.* ¶ 42. Moreover, she has documented doctors' notes that advice that her disability affects her ability to travel to work. *Id.* ¶ 79, 98; *see also Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 183 (S.D.N.Y. 2023) (finding that a doctor's advisement that plaintiff should not travel to work due to a medical condition rendered the condition substantially limiting). These allegations are sufficient to allege a qualifying disability.

### 2. Adverse Action & Discriminatory Intent

For the same reasons stated in Discussion Section II(C), Plaintiff has pled an adverse employment action through the denial of accommodation and transfer requests. *See Campbell v. New York City Transit Auth.*, 93 F. Supp. 3d 148, 169 (E.D.N.Y. 2015), *aff'd*, 662 F. App'x 57 (2d Cir. 2016) (analyzing adverse employment action under the same standard for Title VII, ADA, and ADEA claims).

However, for reasons similar to those stated in Section II(D), Plaintiff has failed the plead the requisite discriminatory intent. Plaintiff alleges no commentary by Defendants that would

14

suggest they denied her accommodation and transfer requests on account of her disability. Plaintiff simply states that "other employees who are not disabled were permitted to work from home," Compl. ¶ 93, that another supervisor in her unit had been granted a reasonable accommodation, *id.* ¶ 91, and that another supervisor on her team with less seniority had been granted a transfer request, *id.* ¶ 100, 102. Plaintiff offers no details about how these other employees were similarly situated to herself, or how these granted requests support a plausible inference of disability discrimination.

Plaintiff has failed to state a federal claim for disability discrimination.

### B.  NYSHRL & NYCHRL Claims

Although the NYSHRL and NYCHRL impose a more lenient pleading standard for plaintiffs alleging discrimination, Plaintiff nonetheless fails to meet this low bar. The NYCHRL "is not a general civility code." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 300 (S.D.N.Y. 2019) (internal quotations and citations omitted). "The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive . . . . [She] must show that [she] has been treated less well at least in part 'because of [her disability].'" *Id.*; *see also Pena-Barrero v. City of New York*, No. 14-CV-9550 (VEC), 2017 WL 1194477, at *15 (S.D.N.Y. Mar. 30, 2017). All Plaintiff has done is point out that some others were granted requests, while hers were denied. Beyond this, Plaintiff has alleged nothing to show that the decision to grant or deny requests was in any way related to an employee's disability status. At minimum, Plaintiff might compare her roles, duties, and performance levels to the roles, duties, and performance levels of comparable employees who were granted accommodations, to show Defendants lacked reasonable basis to grant their requests while denying hers. But Plaintiff has not even done this. Plaintiff states no state or city discrimination claim.

### IV. Plaintiff's Request to Amend Is Granted

Plaintiff requests leave to amend the Complaint should the Court deem it to be factually deficient. Opp. at 23. Per this Court's Individual Rules, Plaintiff was required to notify the Court, within 10 days of receipt of the motion to dismiss, whether Plaintiff intended to file an amended pleading. Plaintiff was on notice that "declining to amend [her] pleadings to respond to a fully briefed argument in the motion to dismiss may well constitute a waiver of their right to use the amendment process to cure any defects that have been made apparent by the briefing." *See* Rule 4(e) of the Court's Individual Rules and Practices in Civil Cases. In this case, Defendants' briefing on the motion to dismiss made well apparent the deficiencies in pleading.

However, to ensure that Plaintiff has a full and fair opportunity to be heard, Plaintiff is granted limited leave to amend the Complaint where amendment might not be futile. Specifically, Plaintiff may amend the complaint to assert ADA, ADEA, Rehabilitation Act, NYSHRL, and NYCHRL claims for disability and age-based discrimination for denial of accommodations and requests to transfer. Plaintiff may not assert claims for discrimination based on unfavorable evaluations and critiques at work, or any claims against Defendant Rush-Brown.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff may file an Amended Complaint in accordance with this Order by **May 1, 2025**. The Clerk of Court is directed to terminate ECF No. 15.

Dated: March 25, 2025
      New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge